**Commonwealth v. Knipp**

*Matthew D. Weintraub, assistant district attorney,* for plaintiff.

*Deborah Weinman, assistant public defender,* for defendant.

WEAVER, *J.,* March 22, 1995—This matter is before the court upon the interlocutory appeal as of right of

the Bucks County District Attorney from this court's order to suppress certain evidence in the above-referenced matter. Defendant's criminal information includes, inter alia, charges of carrying a firearm without a license, possession of a controlled substance with intent to deliver and possession of drug paraphernalia.

The Commonwealth argues that this court erred in granting a motion to suppress evidence of drugs and drug paraphernalia found in the vehicle of the defendant. The motion to suppress a firearm on the person of defendant was denied.

Pursuant to Pa.R.A.P 1925(b), the Commonwealth presented the following issues for consideration: whether the arresting officer had sufficient probable cause to search defendant's car for additional weapons at the time of her search; whether the defendant was effectively under arrest at the time the vehicle search was conducted by the officer; whether the officer was entitled to search defendant's car incident to his arrest; and finally whether the officer was justified in searching defendant's car for weapons to assure her personal safety.

## FACTS

The facts can be summarized briefly. On January 25, 1994, at 1 a.m., Officer Christine Kelliher of the Bensalem Township Police Department was on patrol in a marked police vehicle when she approached two white males standing on the side of Brownsville Road. The roadway was icy and the sides of the road were snow-filled. (N.T. 14.) Because of the road conditions, she took "evasive action" to avoid hitting the men by swerving around them. (N.T. 3.) She then proceeded up Brownsville Road, turned her vehicle around, and observed the two men enter a white Toyota vehicle. (N.T. 18.)

Officer Kelliher followed the Toyota for approximately one and one half miles while she ran a check on the license plate. She stopped said vehicle after it turned into an apartment complex and requested the operator, the defendant in this matter, to produce his operator's license. (N.T. 5.) Defendant could not provide any license due to its suspension and, when asked for other identification, produced his permit to carry a firearm. (N.T. 7.) Upon further inquiry by the officer, the defendant affirmed that he had a firearm in his left inside jacket pocket. (N.T. 8.) The permit indicated that it had expired one hour previously, on January 24, 1994, 12 a.m. (N.T. 10, 21.) The officer directed the defendant to wait in the Toyota while she radioed for assistance.

The officer then questioned one of the passengers in the vehicle who related that he and the other passenger had been waiting for the defendant to pick them up and had mistaken her patrol car for his vehicle. (N.T. 24.) The stated purpose of this inquiry was to determine whether or not the passengers were in danger, which was promptly answered in the negative. (N.T. 5, 22.)

After receiving radio confirmation that defendant's operator's license was suspended and that there were no outstanding warrants for his arrest, Officer Kelliher spoke with a Bensalem detective, via radio, who informed her that the defendant was "Code 18-related which means he was involved with drugs." (N.T. 9.)

Upon the arrival of the requested police assistance, Officer Kelliher asked the defendant to vacate the vehicle. The defendant permitted her to remove the firearm from his inside pocket, informing the officer that it was loaded with one round in the chamber. (N.T. 9, 10.) While Officer Kelliher secured the weapon, backup

officers removed the passengers from the Toyota, obtained identification and searched them. (N.T. 10.)

Officer Kelliher then proceeded to search the defendant's vehicle: "I looked over into the passenger side of the car in the little side compartment on the door and there was a black pouch there. I took that, I opened the zipper. I found an electronic scale——." (N.T. 10.) Further search of the vehicle revealed six empty small glassine baggies, a spoon and a plastic bottle under the seat. (N.T. 11.)

## DISCUSSION

Both the federal and state constitutions provide protection against unreasonable searches and seizures. This protection is extended to the automobile, where a reasonable expectation of privacy against unreasonable searches and seizures exists. *Commonwealth v. Long,* 489 Pa. 369, 373, 414 A.2d 113, 115 (1980). The Fourth Amendment of the United States Constitution, as incorporated against the states by the Fourteenth Amendment, *Mapp v. Ohio,* 367 U.S. 643 (1961), provides:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Constitution Amendment IV.

A similar provision of the Pennsylvania Constitution states:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or thing shall issue without describing them

as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Constitution Article I Section 8.

"[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only 'unreasonable searches and seizures.' The relevant test is ... the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." *South Dakota v. Opperman,* 428 U.S. 364, 373-74, 96 S.Ct. 3092, 3099 (1976) citing *Coolidge v. New Hampshire,* 403 U.S. at 509-510, 91 S.Ct. 2022, 2059, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting).

The United States Supreme Court has held that an officer can conduct a warrantless search of those portions of the passenger compartment of a vehicle in which a weapon could be hidden when the circumstances are such that a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger," so long as the belief was based on specific articulable facts. *Michigan v. Long,* 463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 3841, 77 L.Ed. 1201 (1983) (quoting *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

A forcible stop and seizure is not violative of the Fourth Amendment when the officer has articulable and reasonable grounds to suspect or probable cause to believe that criminal activity may be afoot. When specific articulable facts exist, the officer may conduct a search of the passenger compartment in which a weapon could be placed. *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721 (1994). However, a mere suspicion by a police officer that the occupants of a car are engaged in criminal activity is not sufficient to

justify a probable cause search. *Commonwealth v. Dussell,* 439 Pa. 392, 396, 266 A.2d 659, 661 (1970). In order to perform a warrantless search of an automobile, the level of probable cause must be such that a search warrant could be issued. *Commonwealth v. Pleummer,* 421 Pa. Super. 51, 617 A.2d 718 (1992), *alloc. denied,* 536 Pa. 622, 637 A.2d 282 (1993); *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988 (1991).

" 'Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot' the officer may briefly stop the suspicious person and make 'reasonable inquiries,' aimed at confirming or dispelling his suspicions." *Commonwealth v. Johnson,* 429 Pa. Super. 158, 164, 631 A.2d 1335, 1338 (1993) (quoting *Terry v. Ohio,* 392 U.S. at 30); see also, *Adams v. Williams,* 407 U.S. 143, 145-46 (1972).

While Officer Kelliher obtained the firearm pursuant to its voluntary relinquishment, the purpose of her initial stop was dubious. Even with the conclusion that a legitimate investigatory stop occurred, the facts and circumstances did not warrant the officer's transgression of constitutional grounds by searching the vehicle. *Commonwealth v. Fountain,* 423 Pa. Super. 296, 621 A.2d 124 (1992).

This court found that the sole, underlying reason Officer Kelliher searched the vehicle for contraband was based on information that the defendant was "precoded" by her department as one who had previous drug involvement. To justify a warrantless search, an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, that the vehicle has been used in the furtherance of the commission of a felony, or that there

is a basis for believing the evidence of a crime is concealed within the vehicle, or that there are weapons therein that are accessible to the occupants. *Fountain, supra* at 299-300, 621 A.2d at 126, citing *Commonwealth v. Milyak,* 508 Pa. 2, 8, 493 A.2d 1346, 1349 (1985).

Officer Kelliher did not have articulable probable cause to search the defendant's car for weapons, nor was consent given to do so.

Defendant's vehicle was stopped as a result of the incident in the roadway. No act indicated that a felony was committed by the occupants of the vehicle, that the vehicle had been used in furtherance of a felony or that evidence of a crime or weapons accessible to the occupants was contained therein. (N.T. 20, 21.) Furthermore, the officer testified that there was nothing unusual in the way the occupants entered the vehicle or the manner in which the car was being operated. (N.T. 24.)

Based upon "reasonable inquiries" by the officer, ostensibly to determine whether the occupants of the car were in danger, the defendant revealed evidence of a firearm. *Terry, supra* at 30. (N.T. 5, 22.) However, the tainted evidence of drugs and drug paraphernalia were obtained via an illegal search as probable cause was absent. See *Commonwealth v. Lopez,* 415 Pa. Super. 252, 609 A.2d 177 (1992). As such, the evidence was suppressed by this court.

The Commonwealth next argues that the defendant was effectively under arrest at the time the vehicle search was conducted and that the officer was entitled to search the vehicle incident to defendant's "arrest." We disagree. As the facts and Officer Kelliher's testimony plainly indicate, an investigatory stop resulted, not an arrest. (N.T. 12.) Officer Kelliher admitted that the arrest did not take place until after the search of the car revealed the evidence at issue. (N.T. 12.) Prior

to the seizure of the drug evidence, the officer did not deem it necessary to arrest the defendant for the recently expired gun permit. An arrest and incidental search require probable cause which, in the instant case, did not arise independent of defendant's Fourth Amendment rights being violated. See *Terry v. Ohio, supra.* Therefore, by definition, the search incident to the "arrest" of defendant is invalid.

Additionally, "[a] 'custodial detention' must be supported by probable cause ... [f]ormal arrest requires probable cause and needs no further definition." *Commonwealth v. Douglass,* 372 Pa. Super. 227, 239, 539 A.2d 412, 418 (1988), *appeal denied,* 520 Pa. 595, 552 A.2d 250 (1988); citing *Dunway v. New York,* 442 U.S. 200, 99 S.Ct. 2248 (1979). As the court found probable cause was absent, the defendant was not effectively under arrest.

A lesser standard than probable cause exists for an investigative detention: reasonable suspicion. *Douglass, supra* at 238, 539 A.2d at 418. Such suspicion is supported when articulable and reasonable grounds suspecting criminal activity exist. *Morris, supra* at 421, 644 A.2d at 723. However, the continued detention of defendant and subsequent search of the vehicle was not justified in that the officer did not possess a "reasonable suspicion of illegal transactions in drugs or of any other serious crime." *Lopez, supra* at 261, 609 A.2d at 182 (quoting *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319 (1983)).

Finally, the officer was not justified in searching the defendant's car to assure her personal safety. As a matter of course, a police officer may, because of the ever present risk that an arrestee may seek to use a weapon or destroy evidence, conduct a search of an arrestee's person and the area within his immediate control. *Com-*

*monwealth v. Timko,* 491 Pa. 32, 417 A.2d 620 (1980); see also, *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). However, the search of the vehicle did not occur pursuant to a valid arrest. Rather, the search took place while the defendant was under investigative detention. "Once a stop is deemed reasonable for Fourth Amendment purposes, a police officer may frisk an individual to search for weapons if 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Commonwealth v. Haupt,* 389 Pa. Super. 614, 620, 567 A.2d 1074, 1077 (1989) (quoting *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883); see also, *Michigan v. Long, supra.*

While this court is cognizant of the dangers associated with police work, no such danger existed which justified the initial search beyond the defendant's person. The expanded warrantless search of the vehicle was inappropriate. Two other officers were present at the scene. The passengers had vacated the car and were searched and identified by the assisting officers. (N.T. 10.) All parties were cooperative. Furthermore, the arresting officer was given no indication from the passengers that they were in peril. If the officer believed it necessary to search the car further, the officer should have taken the defendant into custody, impounded the car and obtained the appropriate warrant, for which the prerequisite, probable cause, does not appear on this record.

There exists no permissible nexus between the discovery of the drugs and drug paraphernalia and the activity that led to its seizure, hence, we entered our order granting the suppression herein.