J. S21043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. : No. 1791 WDA 2017
:
DEMETRIUS ANTONIO ODEM :

Appeal from the Order Entered November 9, 2017,
in the Court of Common Pleas of Mercer County
Criminal Division at No. CP-43-CR-0001034-2017

BEFORE: OLSON, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 09, 2018**

The Commonwealth appeals from the November 9, 2017 order entered in the Court of Common Pleas of Mercer County that granted the omnibus pretrial motion to suppress physical evidence filed by appellee, Demetrius Antonio Odem. After careful review, we affirm.

The suppression court set forth the following:

> This case arises out of a search of a vehicle [that appellee] was operating on June 27, 2017. [Appellee] was charged with possession of cocaine with the intent to deliver, possession of heroin with the intent to deliver, possession of a controlled substance and possession of drug paraphernalia.[1]
>
> A preliminary hearing was held on June 29, 2017, before Magisterial District Judge Ronald Antos. At the conclusion of the preliminary hearing, [appellee] was ordered held for trial on all counts.

---

[1] 18 Pa.C.S.A. 35 P.S. §§ 780-113(a)(3), (a)(16), and (a)(32), respectively.

[Appellee] was arraigned on August 29, 2017.

An omnibus motion seeking to suppress the results of the search of [appellee's] person and his vehicle was filed.

An evidentiary hearing on the motion was held on November 8, 2017. At the conclusion of the hearing, this court made the following findings of fact:

1. Patrolman Joey Brant is employed by the City of Farrell Police Department. He has been so employed for over a year.

2. On June 17, 2017, Officer Brant was working the midnight shift which runs from 11:00 p.m. to 7:00 a.m.

3. At approximately 4:30 a.m., he was proceeding north on Fruit Avenue when he observed three individuals in the front yard of a house that appeared to be abandoned.

4. The steps to the residence were broken down and the grass on the lawn was approximately knee height.

5. Earlier that night the officer had responded to a fire at an abandoned house in the area.

6. The area is also known to have several burglaries.

7. The officer observed as he passed the house that one of the individuals appeared to stumble, which indicated to the officer that the individual was under the influence.

8.  The officer went around the block. When he returned, all three individuals were in a 2008 Chrysler 200 four[-]door vehicle.

9.  The officer pulled up next to the vehicle and told the occupants they were not free to leave.

10. [Appellee] was in the driver's seat. There was another individual in the passenger front seat and an individual in the passenger rear seat.

11. The individual in the passenger rear seat was the same individual the officer saw stumble.

12. The officer tried to engage that individual, but the individual was close to comatose.

13. The officer instructed all of the individuals to remove their hands from their pockets more than once. They did so.

14. There is no evidence to show they were reaching around the vehicle to find anything.

15. Being concerned that there might be something in their pockets because of reaching in, the officer got the occupants out of the vehicle and conducted a pat down search.

16. Nothing was found during said pat down search.

17. The officers then decided to search the vehicle for weapons.

18. The officer opened the front console and found a scale with residue.

19. In the front seat area he also found a cigarette pack which contained several packets of heroin and several packets of cocaine.

20. [Appellee] was placed under arrest and money and cell phones were found on his person.

On the basis of these facts, this court concluded the search of the vehicle's console was unlawful because there were no facts to support the search and the resulting search of [appellee's] person was the product of the unlawful search.

Suppression court opinion, 12/19/17 at 1-4 (unnecessary capitalization omitted).

The record reflects that following entry of the order granting appellee's motion to suppress, the Commonwealth filed a motion for reconsideration, which the suppression court denied. The Commonwealth then filed a timely notice of appeal to this court. Within its notice of appeal, the Commonwealth certified that the suppression court's order would terminate or substantially handicap appellee's prosecution. *See* Pa.R.A.P. 311(d) (permitting Commonwealth appeal from an interlocutory order if it certifies that the order will terminate or substantially handicap the prosecution). The suppression court then ordered the Commonwealth to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely complied. Thereafter, the suppression court filed its Rule 1925(a) opinion.

The Commonwealth raises the following issues for our review:

> 1. Whether the suppression court erred by holding that the scope of the **Terry**[2] frisk did not include the protective search of the vehicle?
>
> 2. Whether the suppression court erred by holding that the officer did not have reasonable suspicion to conduct a **Terry/Long**[3] search of the vehicle?

Commonwealth's brief at 4.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain **de novo** review over the suppression court's legal conclusions.

**Commonwealth v. Korn**, 139 A.3d 249, 252-253 (Pa.Super. 2016)

(internal citations and quotation marks omitted).

---

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

[3] **Michigan v. Long**, 463 U.S. 1032 (1983).

With respect to the Commonwealth's first issue, the suppression court concluded that the Commonwealth "misstates" the suppression court's ruling and the law and that it:

> did not hold that the scope of a ***Terry*** search does not include a protective search of a vehicle. This [c]ourt concluded that there were insufficient facts to permit a reasonable prudent man to conclude a weapon was in the console. This conclusion is consistent with the existing case law. ***See Commonwealth v. Morris***, 644 A.2[d] 721 (Pa. 1994).

Suppression court opinion, 12/19/17 at 5.

Therefore, we proceed to the Commonwealth's second claim of error, which is that the suppression court erred when it held that Officer Brant did not have reasonable suspicion to search the console of the car for weapons.

> In ***Michigan v. Long***, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983), and ***Commonwealth v. Morris***, 537 Pa. 417, 644 A.2d 721 (Pa. 1994), the respective Supreme Courts promulgated the test for determining whether a police officer may conduct a protective search of the interior compartment of a car for weapons. In ***Long***, the United States Supreme Court applied the test announced in ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and held that a weapons search may be performed where an officer has reasonable suspicion that a firearm may be secreted in the car and that the search may encompass any area where a weapon could be hidden and accessible to the defendant in the vehicle. In ***Long***, the High Court made the apt observation that "detentions involving suspects in vehicles are especially fraught with danger to police officers." ***Long***, ***supra*** at 1047. The ***Long*** Court's specific holding is that

the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

***Long***, ***supra*** at 1049-50 (partially quoting ***Terry***, supra at 21).

In ***Morris***, ***supra***, our Supreme Court concluded that the ***Long*** standard comported with the Pennsylvania Constitution. In that case, the Supreme Court ruled that a protective search of the interior of the car was warranted based on the following narrative. After being stopped for a traffic infraction, the defendant leaned down toward the floor near the center console, he briefly placed his hand between his legs after being ordered to put them on the steering wheel. In the course of the stop, the police observed a metal pipe in the car. In upholding the existence of reasonable suspicion to conduct a protective weapons sweep of the vehicle, our Supreme Court ruled that the police officer had sufficient facts at his disposal to warrant a reasonably prudent man to believe that his safety "was compromised" sufficiently to allow the police intrusion in question. ***Morris***, ***supra*** at 723. The Court stated that the defendant's behavior of leaning down and reaching between his legs was consistent with hiding a weapon. ***See also Commonwealth v. Grahame***, 607 Pa. 389, 7 A.3d 810, 816 (Pa. 2010) (a protective search is justified under ***Terry*** when "the officer can articulate facts that establish an

> individualized, objective basis for perceiving a threat of armed violence"). We look at the totality of the circumstances facing an officer when we examine whether that officer came to a reasonable suspicion to search for a weapon. ***Commonwealth v. Simmons***, 2011 PA Super 43, 17 A.3d 399, 403 (Pa.Super. 2011).

***Commonwealth v. Tuggles***, 58 A.3d 840, 842-843 (Pa.Super. 2012).

Here, the suppression court concluded that Officer Brant lacked reasonable suspicion to believe that appellee may have secreted a weapon in the console of the automobile based upon the following facts which Officer Brant articulated at the suppression hearing:

> [I]t was night time, the area was a high crime area, and [appellee] and his co-defendants kept their hands in their pockets. There is no evidence they were moving around the vehicle, reaching into any areas of the car or doing anything.[4]

Suppression court opinion, 12/19/17 at 5.

Our review of the record reveals that Officer Brant failed to articulate sufficient facts to support a conclusion that he had reasonable suspicion to believe that a firearm may be secreted in the console of appellee's vehicle that would warrant a reasonably prudent man to believe that his safety was

---

[4] We note that during the suppression court's examination of Officer Brant, the Officer testified that the back seat passenger was "moving his hand around inside his pocket." (Notes of testimony, 11/8/17 at 24.) When asked whether the front seat passenger was "moving his hands around anywhere," the officer stated, "I can't testify to that at this time." (***Id.***) When asked whether the officer saw appellee "moving his hands around anywhere other than his pocket," the officer stated, "I can't testify that I saw him reaching in his pocket." (***Id.***)

compromised. Therefore, the record supports the suppression court's factual determinations. We further find that the suppression court properly applied the law to the facts.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2018